## W. R. BAKER *v.* S. G. COCHRAN.

**Chancery Decree — When Reversed on Facts.**

> A decree of a Chancery Court will be reversed if the evidence shows that the conclusion of the chancellor on the facts on which he placed the decree is wrong.[1]

---

1

A decree of a chancellor will not be reversed in this court on the facts solely, unless the preponderance of the evidence against it be very great. The decree will not be set aside merely because it is doubtful whether it be right or wrong. Dillard *v.* Wright, 11 S. & M. 455.

Appellant, Baker, filed the bill in this case in the Chancery Court of Holmes county against appellee and all others claiming or having any legal or equitable claim to the lands described in his bill to confirm his title to said lands. From a decree refusing to confirm his title, but giving him a lien for taxes he had paid, he appeals.

The bill alleges that the land was sold to the State for taxes in the year 1869, for the taxes of 1868, as the property of S. G. Cochran, and that it was held by the State until in October, 1875, when it was offered for sale by the sheriff and tax-collector of said county under the act of the Legislature known as the "Abatement Act," and the acts amendatory thereof, when it was again struck off to the State, and was held by the State under that sale until November, 1879, when it was sold by the auditor of public accounts to complainant.

The defendant, Cochran, answered the bill, alleging, among other things, that the sale made under the "Abatement Act" was void because the tax-collector did not make out a complete and proper list of lands to be sold as provided by section 9 of the act to amend the act entitled the "Abatement Act," of the tax accrued on land sold to the State prior to 1866; nor was such list ever recorded by the clerk of the Chancery Court, and because lists of land sold to the State were not filed with the clerk of the Chan-

---

If the evidence be exactly equiponderant the decree will not be set aside, though it be in favor of the affirmant. Fox *v.* Matthews, 33 Miss. 433.

Nor will this court set aside the report of a commissioner in chancery, confirmed by the chancellor, assessing the hire of slaves, merely because four witnesses against three prove the assessment too high. There should be a clear preponderance against the report to warrant this court in setting it aside. Trotter *v.* White, 4 Cush. 88.

A decree manifestly against the evidence by deposition on which it is based will be reversed on appeal. Miss. Cotton-Oil Co. *v.* Starling-Smith Co., 23 So. 648.

The decision of the chancellor on question of fact arising on oral testimony heard before him will not be reversed unless plainly wrong. Interstate Cattle Co. *v.* Lapsley, 24 So. 532.

Where evidence as to value of property is conflicting, a master's report confirmed by the lower court will not be disturbed on appeal. Millsaps *v.* Chapman, 76 Miss. 942; 26 So. 369.

A decree of the chancellor on conflicting evidence will not be set aside where there was any evidence to sustain it. Vaughan *v.* Commercial Bank, 18 So. 270.

cery Court of Holmes county and were not recorded as required by law.

The evidence as shown by the record is sufficiently set out in the opinion of the court. The decree of the court recites as follows:

"It appearing that the assessment roll provided for by section 9 of the Abatement Act, approved March 1, 1875, had not been made out or filed in the office of the clerk of the Chancery Court of Holmes county, Mississippi, it is ordered that the prayer of said bill for confirmation of title be refused."

APPEALED from Chancery Court, Holmes county, R. W. WILLIAMSON, Chancellor.

Reversed and remanded, November 7, 1881.

*Attorney for appellant, H. S. Hooker.*

*Attorneys for appellee, Gwin & Noel.*

Brief for appellee is not found in the record.

Brief of H. S. Hooker:

There were two sales of the land in controversy. The first in 1869, for the taxes of 1868; the next sale was on the 11th day of October, 1875, under what is known as the Abatement Act. (See Acts, 1875, p. 11.) Under both acts the deed was *prima facie* evidence that the land was properly sold. It was devolved upon the defendant to set up in his pleadings and establish by proof the facts which invalidate the tax title. Griffin *v.* Dogan, 48 Miss.

This court has decided that the prerequisites to a valid sale of land for taxes are a valid levy of taxes and a valid assessment— in other words, the existence of those things which go to the very right and jurisdiction of the collector to sell and convey. The other provisions of the statute are merely directory.

The defendant has presented the following points as invalidating the tax title acquired by Baker under the Abatement Act.

First, That the State having acquired no title by the sale of 1869, the sale under the Abatement Act conferred no title. In other words, that the validity of the sales under the Abatement

Act depend upon the validity of the State's title to the land previously sold—that the title was a *derivative* title.

Second, That the land was not sold on the proper day—that it was not sold on the second Monday in May.

Third, Because a list of land sold was not filed with the clerk of the Chancery Court and was not recorded by him.

Fourth, Tax-collector did not make out proper lists of land as required by section 9 of the Act of 1875.

The first, second and third objections are easily disposed of. Under the special Acts of 1875 (July), p. 13, the sale of land under the Abatement Act of that year in Holmes county was to take place on the second Monday in October, when the above lands were sold.

The lists of land sold to the State were filed with the clerk and recorded, as shown by the evidence, if such filing and recording were necessary. It is true that according to the testimony the list was not recorded until a year or more after it was filed. There was no limitation as to the time in which it was to be recorded, and if the list had never been recorded the title would not have been affected by such failure. The certificate of the clerk shows proper filing, etc.

As to the first objection, a glance at the statutes shows that it is entirely untenable. It was the obvious design and policy of the Legislature to relieve itself of the vast quantity of land it "held and claimed" and have it placed on the assessment rolls, and become productive of revenue. The Legislature abated all the taxes for the years prior to 1874, and provided that all the lands "held and claimed" (not owned) by the State should be offered for sale for the taxes of 1874; that the tax collector should make a list of such lands and advertise them for sale, and should generally observe the statutes pertaining to the sale of land for taxes; and directing him to strike off to the State the lands that did not bring sufficient to pay the taxes, and giving the same effect to the sheriff's and tax-collector's deed in such cases that pertained to their deeds under section 1700, Code 1871. There is nothing in the act, no sentence or word, that sustains the theory of the defendant that the State was offering for sale her previously acquired title. It was a sale of the land for the taxes of 1874, independent of the title of the State as much so as the sale of the lands under the general tax laws for that year. If the land was

"held or claimed" by the State, it came within certain provisions of that act and was liable to sale for the unpaid taxes. The State simply said to the citizen, "I have or claim your land for taxes previously due; I will abate or release all taxes accrued prior to 1874. Come forward and pay the taxes for 1874; if not, the land will be sold by the tax-collector for the non-payment thereof." There is no doubt but that under our statutes the title created by a sale of land for taxes is an independent and distinct title, cutting out all prior claims, equities, encumbrances, etc., and not a mere derivative title. The proceedings are *in rem*, and, although not listed or assessed against the true owner, a sale would cut out the true owner. So the sale under the Abatement Act created an independent and distinct title, and not a derivative one. The land-owner was not even personally responsible for the taxes on those lands, but they could only be collected by a sale of the land—by a proceeding *in rem*. Blackwell on Tax Title, §§ 534, 555.

The chancellor based his decree in the cause on the point that there was no assessment roll prepared as required by section 9 of the Abatement Act, and that no assessment roll was filed in the office of the chancery clerk. There is nothing in the act which required the assessment roll to be filed in the office of the chancery clerk. The statute required the list of lands struck off to the State to be filed and recorded, which was done. But there is no requirement of the statute for the roll made by the tax-collector to be filed or recorded. The jurisdiction or right of the sheriff and tax-collector to sell did not depend upon its being filed and recorded in the office of the chancery clerk. It is not a condition precedent to the valid exercise of his power to sell. The Abatement Act, while by the express terms of the statute it conformed to many of the provisions that belonged to the general revenue law, yet it was to a certain extent *sui generis*. It dispensed with the services of an assessor, or rather it devolved the duty of the assessor to a certain extent upon the collector; dispensed with reporting same to the board of supervisors and their approval thereof, with its being deposited in the chancery clerk's office and copy furnished the collector to collect from, and many other provisions of the revenue law. He did not collect from a copy, but from the original made out and retained by him. There is nothing in the act which says, or from which a legal inference could

be drawn, that the roll made out by him and from which he was to collect should be filed and recorded in the chancery clerk's office.

As to whether a roll was made out by the tax-collector under the Abatement Act, the testimony of W. F. Stigler abundantly proves that a roll was made out by him in accordance with section 9 of the Abatement Act. He even employed counsel to assist him. This was made out before the second Monday of May, 1875. The record or roll having been lost, it was certainly competent to prove same by parol, and his testimony was competent to establish it. 50 Miss. 722; 10 S. & M. 549; 1 Greenleaf, 581; Phillips Evidence, Cowen & Hill's Notes, vol. 4, pt. 2, 285-289; Blackwell on Tax Titles.

We then have the evidence that the land was claimed by the State; that a roll was made out as provided for by section 9 of the Abatement Act under which the sheriff was authorized to sell and convey. There is proof of the existence of these prerequisites to the power of the sheriff to sell, independent of the *prima facie* evidence that attaches to the sales list and the deed. If it should be argued that the loss of the roll is not sufficiently proven, then the presumptions that attach to the deed are sufficient. The onus is devolved upon the defendant to show that there was no valid assessment, and they rely upon the statements of the deputy clerk and deputy sheriff to establish their defense. If their testimony is insufficient proof of loss of record to allow complainants to introduce parol testimony, then it is clearly insufficient to establish that no roll had been made as required by said act, which it was incumbent on them (defendants) to establish. If it is insufficient for the purpose of proving loss of record and thereby laying foundation for the introduction of parol testimony, it is the more incompetent and insufficient to establish the non-existence of a record.

Striking from the record the testimony of Dyer, Stigler, and Durden, the plaintiff was entitled to a decree under the presumption that attaches to the sales list and deed. With the testimony in the record the complainant is entitled to a decree, both because of the presumptions that attach to the deed and list are not overthrown, and because there is the positive and actual proof of the existence of these prerequisites to the power of the tax-collector

to sell. I therefore ask that the decree of the chancellor be reversed and the title of Baker confirmed.

OPINION.—CAMPBELL, J.:

It is probable the chancellor had before him on the hearing of this case *data* for his decree which was not before us. The decree shows that it was based on the conclusion of fact that "the assessment provided for by section 9 of the Abatement Act, approved March 1, 1875, had not been made out or filed in the office of the clerk of the Chancery Court." We think the evidence shows that there was made out by the tax-collector a list of the lands to be sold, as directed by section 9 of the Act of March 1, 1875, preparatory to the sale directed by the law to be made; and it was not required by the law that this list should be filed in the office of the chancery clerk. It was to be held by the collector, who was to sell all lands remaining deliquent shown by it, and afterwards to report to the chancery clerk a list of lands struck off to the State at such sale. (Section 12 of said act.) The law indulges the fiction that officers do their duty until the contrary is made to appear, and besides the presumption to be indulged, the evidence is pretty satisfactory that a list was made out under section 9 of the act mentioned. A sale was made and a list of lands struck off to the State was filed with the chancery clerk. Whether the sale was legal and the title was vested thereby in the State, we do not decide, but disagreeing with the chancellor as to the conclusion of fact on which he placed his decree, *we reverse it* and remand the cause.